**SO ORDERED.**

**SIGNED September 28, 2012.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


IN RE:

SAMUEL F. LIPRIE,                        CASE NO. 10-21281

    Debtor                               Chapter 7

-----------------------------------------------------------------

LEE ROY JOYNER, M.D.,

    Plaintiff

VERSUS                                   ADVERSARY NO. 11-02002

SAMUEL F. LIPRIE,

    Defendant

-----------------------------------------------------------------
MEMORANDUM RULING
-----------------------------------------------------------------

    The present matter before the court is a Motion to Compel the

production of privileged documents by creditor Lee Roy Joyner.  The

parties previously exchanged privilege logs describing the documents that have been withheld on the grounds of the attorney-client privilege and/or the attorney work product protection. Specifically, Joyner challenges the privilege logs submitted by S.F.L. & S.I.L., L.L.C., Jones, Walker, Waechter, Poitevent, Carrere & Denegre ("Jones Walker"), and the debtor, Samuel Liprie. Following argument, the parties submitted copies of the documents withheld on the basis of privilege for *in camera* review by the court. Based on the court's review of the documents and consideration of the relevant authorities, the court GRANTS Joyner's Motion to Compel IN PART, and DENIES the motion IN PART as set forth below.

## BACKGROUND

In 1994, Joyner and Liprie formed a joint venture to develop and market a heart catheterization system known as intra-coronary radiation therapy. Joyner is a pulmonologist and medical researcher, and Liprie was a nuclear pharmacist and inventor. The parties referred to their joint venture as Angiorad. Joyner and a third business partner, Dr. Mark Harrison, funded the Angiorad joint venture. The joint venture ultimately produced a device that was successfully tested at a Venezuelan medical facility. The parties' business relationship, however, began to deteriorate in 1995. In early 1995, Liprie bought out Harrison's interest in the

-2-

joint venture.  Liprie also sought to buy out Joyner's 25% interest
in the joint venture, but Joyner rejected the buy-out offer.  In
March 1995, Liprie attempted to expel Joyner from the Angiorad
venture.  Joyner then filed suit against Liprie in Louisiana state
court on February 8, 1996, seeking his 25% share of the profits
from the Angiorad joint venture.  In that proceeding, Joyner
asserted claims for fraud, breach of fiduciary duty, and breach of
contract.  Following a jury trial, the jury returned a verdict
finding:  (1) that Joyner had a 25% ownership interest in the
Angiorad joint venture; (2) that Liprie defrauded Joyner out of his
25% share of the profits from the Angiorad joint venture; (3) that
Liprie breached his fiduciary duties to Joyner; and (4) that Joyner
was entitled to $4.3 million in money damages, legal interest,
costs, and Joyner's attorney fees.  The court entered judgment on
the jury verdict on November 10, 2008.  The court's judgment was
affirmed in <u>Joyner v. Liprie</u>, 33 So. 2d 242 (La. App. 2nd Cir.
2010), and the Louisiana Supreme Court denied writ.

On July 9, 2009, Joyner commenced a collection proceeding in
the 38th Judicial District Court for the Parish of Cameron,
Louisiana, seeking to "recover converted property and civil fruits"
from Liprie and the non-debtor defendants, including SFL and
Deutsche Bank.  According to Joyner, Liprie created a number of
trusts and related entities, and then transferred his assets to

-3-

those entities for little or no consideration in order to shield the proceeds from the Angiorad joint venture from Joyner's prior judgment. According to Joyner, Liprie formed a Texas limited partnership in May 2001. Liprie also formed two revocable Texas living trusts: S. F. Liprie Living Trust and S. I. Liprie Living Trust. Liprie and these two living trusts were the general partners of the Texas limited partnership. Liprie and S. I. Liprie Living Trust each owned 1% of Texas limited partnership and the S. F. Liprie Living Trust owned 98%. Joyner alleges that, in January 2005, Liprie revoked the S. F. Liprie Living Trust, and that trust's 98% interest in Texas limited partnership reverted to Liprie. Liprie then formed a new entity, defendant S.F.L. & S.I.L., L.L.C., as a Louisiana limited liability company with Liprie as the 99% owner of the entity's membership units. Joyner alleges that the debtor subsequently transferred various assets into S.F.L. & S.I.L., including proceeds from the Angiorad joint venture. Joyner also alleges that Liprie created the Shawn Bray Liprie Inter Vivos Trust No. 1 with his wife as the sole income beneficiary in March 2005, with defendant Deutsche Bank as the trustee. According to Joyner, Liprie subsequently donated his 99% membership interest in S.F.L. & S.I.L. to this trust. This state court collection case was then removed to this court after Liprie filed for relief under Chapter 7 of the Bankruptcy Code, and is

-4-

pending as Adversary Proceeding No. 11-02003.

Joyner subsequently filed the present adversary proceeding seeking a declaration that his state court judgment is non-dischargeable. The parties exchanged discovery, including privilege logs. The instant motion by Joyner challenges the parties' privilege log designations

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

## DISCUSSION

### I.  The Applicable Legal Standards

#### A.  Application of Federal or State Law on Evidentiary Privileges

The parties raise a threshold question of choice of law: whether federal or state law governing privileges applies. The parties that oppose production have relied, in part, on the accountant-client privilege under Louisiana law. If federal law applies, then this privilege is unavailable given that federal courts have not recognized an independent accountant-client privilege. See, e.g., Int'l Horizons, Inc. v. Committee of Unsecured Creditors, 689 F.2d 996, 1003 (11th Cir. 1982). Rule 501

-5-

of the Federal Rules of Evidence provides that federal common governs privileges in cases where federal law supplies the rule of decision, while state privilege law governs in civil cases involving "a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The claims raised in the present case are claims to exclude certain debts from discharge under 11 U.S.C. § 523 and to deny the discharge under 11 U.S.C. § 727. While the court may look to state law for guidance in applying the elements of a non-dischargeability claim, these claims are governed by federal law. Accordingly, federal law on privileges applies to this case.

**B. The Attorney-Client Privilege**

The attorney-client privilege "protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." <u>Hodges, Grant & Kaufmann v. United States</u>, 768 F.2d 719, 720 (5th Cir. 1985). The party invoking the privilege has "the burden of demonstrating [its] applicability." <u>Id</u>. at 721. The application of the privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." <u>United States v. Neal</u>, 27 F.3d 1035, 1048 (5th Cir. 1994). Disclosure of privileged communications to third parties generally waives the privilege. However, the privilege may also extend to a client's or attorney's representatives to the

-6-

extent that the presence of those representatives furthers the provision of legal services to the client. See, e.g., In re Bieter, 16 F.2d 929, 936 (8th Cir. 1994); 24 Wright & Graham, Federal Practice and Procedure §§ 5482, 5483 (1986). In a corporate setting, communications between a corporate employee and the corporation's attorney are privileged if the communication was made at the direction of the employee's superior, was within the scope of the employee's duties, and was made for the purpose of seeking and rendering legal advice to the corporation. Upjohn Co. v. United States, 449 U.S. 383 (1981). Unlike the attorney-client privilege, the attorney work product protection is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) excludes from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The rule further provides that a court must protect against "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Id.

## C.  The Common Interest Privilege

Disclosure of a privileged communication is generally waived if disclosed to a third party "unless made to attorneys for co-

parties in order to further a joint or common interest (known as the common interest rule or joint defense privilege)." <u>In re Sante Fe Intern. Corp</u>., 272 F.3d 705, 711-12 (5th Cir. 2001) (quoting <u>Aiken v. Texas Farm Bureau Mutual Ins. Co</u>., 151 F.R.D. 621, 623 (E.D. Tex. 1993)); <u>U.S. v. BDO Seidman</u>, 492 F.3d 806, 815 (7th Cir. 2007). The common-interest doctrine extends only to communications made in furtherance of the parties' common legal interest. <u>BDO Seidman</u>, 492 F.3d at 816.

### D. The Crime-Fraud Exception

One of the exceptions to the attorney-client privilege is the "crime-fraud" exception. The burden of establishing this exception is on the party challenging the privilege. To invoke the exception, the party seeking to pierce the privilege must make a prima facie showing of (1) an actual or attempted criminal or fraudulent act, and (2) that the communications at issue were in furtherance of that criminal or fraudulent act. <u>In re Grand Jury Subpoena</u>, 419 F.d 329, 336 (5th Cir. 2005); <u>In re International Sys. & Controls Corp. Sec. Litig</u>., 693 F. 2d 1235, 1942 (5th Cir. 1982). A "prima facie" showing requires evidence "such as will suffice until contradicted and overcome by other evidence" that establishes the elements of a crime or fraud. <u>In re Grand Jury Subpoena</u>, 419 F. 3d at 336. Evidence that the attorney was complicit in the fraud is not required to invoke the exception. <u>Dottle v. Bandler</u>

-8-

& Kass, 127 F.R.D. 46, 53 (S.D.N.Y. 1989).  In other words, the
exception may apply even when the attorney has no knowledge of the
fraud.  The crime-fraud exception also applies to the attorney work
product protection.  See In re Int'l Systems, 693 F.2d 1235, 1242
(5th Cir. 1982).

## II.  Application of These Standards to the Parties' Privilege Logs

### A.  The S.F.L. & S.I.L., LLC Privilege Log

#### 1.  Applicability  of the Common Interest/Joint Defense Privilege with Respect to Deutsche Bank

Joyner challenges SFL's privilege designation of documents
that contain communications with Deutsche Bank.  Specifically,
Joyner's challenge is directed at documents 40-51, 54, 55, 58, 60,
137, 157, 162, 163, 169, 191, 206 and 209 on SFL's log.  SFL claims
a common interest/joint defense privilege with respect to these
documents.  In order to establish the common interest privilege,
SFL must show that it shared a common legal interest with Deutsche
Bank and that the communications at issue advanced that common
interest.  BDO Seidman, 492 F.3d at 816.  The court's in camera
review of documents cited by Joyner reveals that the communications
with Deutsche Bank occurred in 2009 - 2011 when the state court
collection proceeding against SFL and Deutsche Bank and the
adversary proceedings in the instant bankruptcy case were pending.
At this time, Deutsche Bank was the trustee of the Shawn Bray

-9-

Liprie Inter Vivos Trust No. 1 (the "Trust"). The Trust, in turn, owns SFL. Deutsche Bank was also a party in the state court collection action and in Adversary Proceeding No. 11-02003. Taken together, these facts support SFL's position that it shared a common legal interest with Deutsche Bank in the defense of the claims asserted against SFL and Deutsche Bank. Based on the court's in camera review, the documents challenged by Joyner, with the exception of document nos. 137, 157, 162, 169, 191 and 201, appear to be communications that further the common legal interests of SFL and Deutsche Bank and thus are subject to the common interest privilege. With respect to documents 137, 157, 162, 169, 191, and 201, there is no evidence that these documents were shared with Deutsche Bank. On their face, these documents include attorney-client communications and/or attorney work product that either specifically references the state court collection action and the present adversary proceeding or includes a discussion of legal strategy with respect to pending litigation. Accordingly, Joyner's motion is denied with respect to these documents and the Deutsche Bank documents.

### 2. Waiver with Respect to Documents in Stulb's Possession

Joyner further objects to the privilege designation of any documents that were in the possession of Stulb & Associates on the

grounds that Stulb is a third party and the circulation of documents to Stulb therefore waived any privilege. The court agrees with Joyner that SFL cannot rely on the accountant-client privilege to shield these documents because no such privilege exists under federal law. The attorney-client privilege, however, extends not only to the client, but also to the client's representatives. See Bieter, 16 F.2d at 936. Here, Stulb & Associates served as the day-to-day manager of SFL. As a business entity, SFL could only act through its managers and agents and, as a result, could only obtain legal advice and services through employees of Stulb & Associates. Courts have held that the attorney-client privilege applies to outside managers and agents in similar circumstances. See, e.g., Bieter, 16 F.3d at 939-40 (privilege extended to independent contractor hired to assist the client partnership in developing real estate); McCaugherty v. Siffermann, 132 F.R.D. 234, 239 (N.D. Cal. 1990) (no basis for distinguishing between consultant's communications with attorneys and corporate employee's communications when each acted within scope of employment); See, also Caremark, Inc. v. Affiliated Computer Services, Inc., 192 F.R.D. 263 (N.D. Ill. 2000). The court, therefore, denies Joyner's motion to compel the production of privileged SFL documents and communications shared with Stulb & Associates.

-11-

### 3. Waiver of The Privilege with Respect to Documents Sent to The Debtor

Joyner also challenges SFL's classification of documents and communications shared with Liprie as privileged. As SFL acknowledges in its opposition brief, Liprie and SFL are "two distinct persons." (SFL opposition brief at 5 [Dkt# 68]). Accordingly, SFL's privileged communications that were shared with Liprie would waive SFL's privilege absent a showing that the common interest doctrine applies to the communication. Based on the court's review of the privilege log, documents numbered 2 and 21 appear to involve communications among Stulb, SFL's lawyers, and Robert Casey of the Jones Walker firm. Although SFL's privilege log identifies Mr. Casey as one of SFL's lawyers, the record reflects that Mr. Casey also served as Liprie's lawyer in connection with estate planning. The contents of documents 2 and 21 establish that Mr. Casey was acting solely as Mr. Liprie's lawyer and was writing to Stulb & Associates in their capacity as managers of SFL. Moreover, these communications involved purportedly arms-length transactions between Liprie and SFL. Nothing in the record or the documents indicate that the purpose of the communications was to further a common legal interest, such as the joint defense against the claims asserted in the instant litigation. The court, therefore, grants Joyner's motion with

-12-

respect to **documents 2 and 21.**

### 4. The Crime-Fraud Exception

Joyner also invokes the crime-fraud exception in arguing that SFL's privilege should be pierced. According to Joyner, the creation of SFL, the Trust, and related entities was part of a scheme intended to delay, hinder, or defraud creditors by transferring and concealing Liprie's assets in these entities. According to Joyner, the assets transferred to these entities were the proceeds from the Angiorad joint venture that were the subject of a breach of contract and fraud verdict and judgment against Liprie in state court. Joyner contends that after the transfers to SFL, Liprie continued to control those entities and had access to the assets transferred to those entities through preferential loans and other transactions with SFL. Joyner argues that Liprie undertook these transactions with the intent to defraud Joyner. These allegations may well create a prima facie showing of fraud on the part of Liprie sufficient to satisfy the first prong of the crime-fraud exception. See In re Campbell, 248 B.R. 435 (Bankr. M.D. Fla. 2000) (transfers undertaken with the intent to hinder, delay, or defraud creditors sufficient to trigger crime-fraud exception with respect to documents "closely related" to those transfers). Joyner's motion, however, fails to adequately address the second prong of the crime-fraud exception: that the privileged

-13-

documents on SFL's log reflect communications made *in furtherance* of the fraudulent conduct alleged by Joyner. Joyner's motion merely invokes the crime-fraud exception and concludes that the exception should "apply to all communications between SFL and its counsel." (Joyner Memorandum at 13 [Dkt. 61]). The crime-fraud exception does not result in a blanket waiver of all privileged communications regardless of their connection to the alleged fraudulent transactions. The crime-fraud exception requires more than a blanket allegation; it requires some evidentiary showing of a reasonable relationship between the documents at issue and the alleged fraud. In re In-Store Advertising Securities Litig., 163 F.R.D. 452 (S.D.N.Y. 1995) (showing of fraud was not sufficient in itself to trigger the exception absent allegation of specific facts showing that the communications at issue were made in furtherance of the fraud); see also In re Grand Jury Proceedings, 641 F.2d 199, 203 (5th Cir. 1981) ("strong suspicion" of fraud not sufficient to support the crime-fraud exception). Accordingly, in order to satisfy the second prong of the exception, Joyner must tie his allegations of fraud to specific documents or categories of documents on the privilege log that he is challenging. Joyner's motion does not satisfy this burden.

Moreover, the bulk of the documents on SFL's privilege log are attorney-client communications and attorney work product in

-14-

connection with the state court collection case involving Liprie and SFL, and the subsequent adversary proceedings filed in this bankruptcy case.[1] For the crime-fraud exception to apply, the movant must show that "the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." <u>Campbell</u>, 248 B.R. at 439. Courts thus recognize a distinction between "advice sought prior to a fraudulent undertaking and advice obtained *after* a fraud has been committed." <u>Id</u>. at 440. Accordingly, legal advice "obtained with respect to past crimes or misconduct, independent of guilt or innocence, is completely privileged." <u>Id</u>. Here, the documents cited involve legal strategy and advice in connection with litigation targeting past transactions alleged to be fraudulent. Accordingly, the court's in camera review of these documents supports SFL's privilege and work product claims, and these documents are not subject to production under the crime-fraud exception.

### 5. Other Privilege Issues

Although not raised in Joyner's motion, the court's review of

---

[1] Specifically, documents 1, 22-107, 113-123, 125, 130-143, 152-173, 175-199, 201-209 fall within this category.

-15-

SFL's privileged documents reveals eight documents for which there is no support in the record for SFL's privilege designation. First, **document number 6** appears to be merely an invoice from Alpha Pools to Stulb with no indication of any privileged communication. Second, documents 108, 109, 110, 111 and 112 are correspondence from Lee Boyer with the Stockwell Sievert firm in Lake Charles. Neither Mr. Boyer nor Stockwell Sievert appear on the list of attorneys included in the privilege log and the log does not identify Mr. Boyer's relationship with the parties. Accordingly, SFL has not met its burden of establishing a privilege with respect to **documents 108, 109, 110, 111 and 112**. Third, despite the description in SFL's privilege log, **document number 174** appears to be a loan closing document executed by Mining Exchange Luxury Residences. There is no other indicia of privileged communications reflected in this document. Finally, **document 200** is one page of the Articles of Organization of SFL. There is no evidence that the document is work product or otherwise privileged.

### 6. Conclusion as to SFL

For the reasons set forth above, the court grants Joyner's motion to compel with respect to **documents 2, 6, 21, 108, 109, 110, 111, 112, 174 and 200** on SFL's privilege log. In all other respects, the portion of Joyner's motion directed to SFL's

privilege log is denied.

**B. The Jones Walker Privilege Log**

    **1. Joyner's Argument that Certain Documents are Not Privileged**

Joyner challenges the privilege designation for documents numbered 2-8, 9, 11, 14-16, 18, 20-26, 30-33, 35-36, 39-42, 44-45, and 47 on at least two grounds.[2]  First, Joyner argues that documents circulated to employees of Stulb & Associates – primarily Kristi Carter – are not privileged because they were shared with a third party.  Second, Joyner argues that the Jones Walker privilege log lacks sufficient evidence that the documents contain privileged communications. The court will first address the Stulb & Associates question.  The documents cited by Joyner consist primarily of correspondence between Robert Casey and Kristi Carter.  Although SFL's privilege log identifies Mr. Casey as an SFL lawyer, the documents reviewed by the court show that Mr. Casey was acting as *Liprie's* counsel.  For example, many of the documents have the heading "Samuel F. Liprie - Estate Planning."  Moreover, Jones Walker's memorandum opposing the Motion to Compel identifies Mr. Casey as Liprie's counsel, not counsel for SFL.  In his role as Liprie's counsel, Mr. Casey's communications with Ms. Carter or Mr.

---

[2]Some of the documents cited by Joyner have been previously produced by Jones Walker.  Joyner's motion is moot as to the documents previously produced.

Stulb may be privileged if they were acting as representatives of Mr. Liprie and these communications were necessary to the provision of legal services to Liprie. See Bieter, 16 F.3d at 935 (private consultant to a partnership who was essential to the rendition of legal advice to the partnership was entitled to the protections of the partnership's attorney-client privilege). Stulb & Associates, however, served dual roles. In addition to serving as Liprie's accountant, Stulb & Associates served as manager of SFL, which is a separate and distinct legal entity. Many of the documents challenged by Joyner involve purportedly arms-length transactions between Liprie and SFL. In that context, Stulb and its employees were purportedly acting in their role as managers of SFL. Documents reflecting communications with Ms. Carter or other Stulb & Associates employees in their role as managers of SFL in connection with transactions between Liprie and SFL are not privileged because these Stulb employees were not acting as representatives of Mr. Liprie. Moreover, Jones Walker cannot rely on the common interest doctrine. Based on the court's review of the documents, Mr. Casey is representing Liprie's interests while Stulb & Associates is purportedly representing the separate and distinct interests of SFL in what are supposed to be arms-length transactions. Accordingly, the court concludes that the following documents reflecting communications with Stulb & Associates are not subject to the attorney-client privilege: **documents 3-5, 21, 23,**

-18-

**24, 30, 31, 33, 35, 36, 38-42**.

With respect to the remaining documents that reflect communications between Mr. Casey and Stulb & Associates, the court concludes that there is evidence that Stulb was acting in its role as Liprie's representative. The court concludes that there is sufficient evidence, based on its in camera review, to support the privilege and work product claims with respect to the remaining documents on Jones Walker's privilege log.

### 2. Documents Subject to the Connecticut Sealing Order

Joyner next challenges documents sealed by a Connecticut state court in connection with Liprie's divorce proceedings. Since these documents have subsequently been produced, Joyner's motion as to these documents is moot.

### 3. The Crime-Fraud Exception

Joyner also raises the crime-fraud exception with respect to the documents identified on Jones Walker's privilege log. Joyner's crime-fraud argument with respect to Jones Walker suffers from the same flaw as its crime-fraud argument with respect to SFL. Simply put, Joyner makes a sweeping claim that all of the Jones Walker privileged documents are subject to the crime-fraud exception without making any showing how specific documents or categories of documents reflect communications in furtherance of Liprie's alleged fraudulent conduct. Accordingly, Joyner's motion is denied to the

-19-

extent that it is based on the crime-fraud exception.

### 4. Conclusion as to Jones Walker

The court grants Joyner's motion with respect to **documents 3-5, 21, 23, 24, 30, 31, 33, 35, 36, 38-42** on Jones Walker's privilege log.

### C. The Debtor's Privilege Log

Joyner challenges the privilege classification of all four documents on Liprie's privilege log on two grounds. First, Joyner contends that the privilege was waived because the documents were circulated to Stulb & Associates. Second, Joyner argues that the crime-fraud exception applies. Liprie contends that Stulb & Associates was acting as his accountant and agent, and that Stulb's participation in communications with Jones Walker was necessary for the rendition of legal advice. The record reflects that, in addition to serving as SFL's manager, Stulb & Associates served as Liprie's accountant. There is no evidence that these documents were shared with Stulb & Associates in its role as manager of SFL. The court, therefore, concludes that the circulation of the three documents identified in Liprie's privilege log to Stulb & Associates did not waive Liprie's privilege. With respect to Joyner's crime-fraud argument, the court's review of the privileged documents does not support Joyner's argument that this exception applies. These documents are legal memoranda that analyze and

-20-

provide legal advice with respect to past transactions. There is no evidence in the record that the advice was used to further ongoing or future fraudulent conduct. <u>See</u> <u>Campbell</u>, 248 B.R. at 440. In sum, Joyner's Motion to Compel the documents on Liprie's privilege log is denied.

### CONCLUSION

For the reasons set forth herein, the court **GRANTS** Joyner's Motion to Compel **IN PART**, and **DENIES** the motion **IN PART**. The court grants Joyner's motion with respect to the following documents on SFL's privilege log: **documents 2, 6, 21, 108, 109, 110, 111, 112, 174 and 200.** The court further grants Joyner's motion with respect to the following documents on Jones Walker's privilege log: **documents 3-5, 21, 23, 24, 30, 31, 33, 35, 36, 38-42.** The court **ORDERS** that these document be produced to counsel for Joyner within **14 days**. In all other respects, Joyner's Motion to Compel is **DENIED.**

**IT IS SO ORDERED.**

### ###